51 CCPA

**Application of Herbert LINDEMANN and Ernst Stirnemann.**

**Patent Appeal No. 7136.**

United States Court of Customs and Patent Appeals.
May 14, 1964.

adapted for many uses, e. g., cushions of various kinds, upholstery filling materials, mattresses and the like. In general, the claimed process consists of introducing a compressed gas mixture into a mold containing a powdery thermoplastic resin mass, heating and compressing the contents of the mold to gel the resin and dissolve the gas therein, and then cooling and releasing the pressure whereby the resin expands under influence of the compressed gas mixture. A feature of asserted novelty in all the appealed claims is the use of a gas mixture consisting of 25–90% by volume of hydrogen with the remainder being a heavy gas such as nitrogen. The thermoplastic resin is polyvinyl chloride, polystyrene or the like.

As pointed out in appellants' specification:

"The general method of producing gas expended cellular bodies has comprised the gassing of a mixture of a thermoplastic resin such as polyvinylchloride and a plasticizer therefor under pressure with a gas, which gas is either added from without the thermoplastic mass into a mold containing the same or is generated from within the thermoplastic mass by the heating of the mass which contains a blowing agent. The gas usually used for this purpose, whether by being introduced from without a mold into a mold, or by being evolved from the decomposition of a blowing agent, has been nitrogen, although other gases and mixtures of gases have also been used. In any event, the gas used has generally been a slowly diffusing gas such as nitrogen, or mixtures of gases, or a gas which diffuses only slightly more quickly than nitrogen."

Appellants' brief asserts:

"The present invention relates to the production of relatively heavy, dimensionally stable, closed-cell cellular bodies which are produced by gas expansion of thermoplastic resins, which bodies have a relatively high specific gravity while having a

Michael S. Striker, New York City, Harold D. Steinberg, Brooklyn, for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

The Board of Appeals affirmed the examiner's rejection of appealed claims 1–3, 6–8, 11–12 and 16 of appellants' application Serial No. 600,072, filed July 25, 1956, for a "Method of Producing Relatively Heavy Dimensionally Stable Closed-Cell Cellular Bodies." The issues on this appeal will be simplified by first considering precisely what it is that appellants disclose and claim as their invention, then considering the differences between that invention and the disclosures of the prior art, and finally determining whether appellants' invention as a whole would have been obvious under the provisions of 35 U.S.C. § 103.

### The Invention in Issue

Appellants' asserted invention resides in a process for making expanded thermoplastic resin materials commonly known as plastic foam. The material is both compressible and resilient and thus is

uniform closed-cell cellular structure. The cellular bodies produced according to the present invention are, as will be seen in the discussion which follows, quite surprisingly from the standpoint of being closed-cell bodies of high specific gravity, dimensionally stable.

"It is important to note that the present invention relates to the production of *closed-cell* cellular bodies, that is cellular bodies containing individual and discrete closed-cells, as opposed to the sponge or open cell products. * * *"

The appealed claims are all directed generally to:

"A process of making a soft, closed-cell, gas-expanded dimensionally stable, tension-free thermoplastic resin article having a uniform cell structure and exceeding a relatively high predetermined specific gravity * * *."

The claims, however, vary as to the scope asserted for the process, as can best be seen by a summary comparison of the claims rather than by inclusion of an entire claim in this opinion.

Claim 1 calls for the introduction into a mold, which contains a powdery thermoplastic resin mass consisting of a resin such as polyvinyl chloride (the claim setting forth a Markush group of resins) and a plasticizer therefor, of a compressed gas mixture consisting of 25–90% by volume of hydrogen and the remainder of a heavy, slow diffusing gas; compressing the contents of the mold including the gas mixture and heating until the thermoplastic mass gelatinizes in order to cause dissolution of the gas mixture in the thermoplastic mass; cooling and releasing the pressure on the unexpanded mass so as to permit expansion under the action of the compressed gas mixture; and subjecting the resulting gas-expanded, closed-cell resin article to gas exchange with the atmosphere so as to permit hydrogen contained in the closed cells to diffuse through the cell walls while the heavy, slow diffusing gas remains therein, thus resulting in shrinking of the closed-cell, gas-expanded thermoplastic resin article so that the resulting body has a relatively high specific gravity but also contains uniform small cells.

Claim 2 is the same as claim 1 except that it specifies nitrogen as the heavy, slow diffusing gas.

Claim 3 calls for the heavy, slow diffusing gas to be evolved by decomposition of a blowing agent while the hydrogen is introduced from without the mold into the mold. The claim requires that the total volume of hydrogen in the gas mixture be between 25–90% by volume, with the remainder of the gas mixture being the heavy, slow diffusing gas.

Claim 6 defines an embodiment wherein the diffusion of the hydrogen from the closed cells of the cellular body is facilitated by removal of the outer crust of the original gas-expanded resin article.

Claim 7 calls for an embodiment wherein the diffusion of the hydrogen from the cells of the original cellular body is facilitated by cutting it into thin sheets.

Claim 8 defines an embodiment wherein the diffusion of the hydrogen from the cells is hastened by heating the resin article to a temperature of about 70–100° C.

Claim 11 is of the same type as claim 1, though somewhat broader. Thus, claim 11 merely calls for the formation of the unexpanded, heated, gelatinized thermoplastic resin mass having the compressed gas mixture of 25–90% by volume of hydrogen and the remainder of a heavy, slow diffusing gas distributed therethrough, without specifying the steps to obtain such formation. The claim then goes on to specify cooling and releasing of the pressure on the gelatinized thermoplastic resin mass to cause the same to expand and form a gas-expanded resin article having closed cells, and then subjecting the closed-cell gas-expanded resin article to gas exchange with the atmosphere whereby the hydrogen diffuses through the cell walls into the atmosphere and some atmospheric gas diffuses through the cell walls into

the closed cells, thus resulting in a thermoplastic resin body of relatively high specific gravity having a uniform, small cell structure and dimensional stability.

Claim 12 is similar to claim 11 and specifies that the thermoplastic resin body is formed of the thermoplastic resin and a plasticizer plus the solvent therefor.

Claim 16 is similar to claim 11 and calls for hastening the gas exchange by heating the gas-expanded resin article to a temperature of 70–100°C, as in claim 8.

The general features which appellants assert as supporting allowability of the claims are two: 1) the use of a mixed gas, specifically a mixture of 25%–90% by volume of hydrogen and the remainder nitrogen, and 2) the step defined in claims 8 and 16 as "heating the thus treated resin article at a temperature of about 70–100°C."

It is appellants' position that these features render the process unobvious over the following references relied upon by the examiner and the board:

Miles       2,268,160   Dec. 30, 1941
Booth       2,531,665   Nov. 28, 1950
Expanded Rub-
    ber (Br.)      578,513   July 2, 1946

Appellants' principal argument in support of unobviousness of the claimed invention is stated in their brief as follows:

"As a result of the use of this specific mixture of gases, namely 25–90% of hydrogen, and for convenience of further discussion throughout the remainder being considered as nitrogen, it is possible according to the present invention to carry out the step of expanding the thermoplastic resin mass to a cellular body of closed-cells in such manner that the cells are of larger than desired size so that the body is of a lower than desired specific gravity, and then to subject the thus obtained closed-cell, gas expanded resin article to gas exchange with the atmosphere, whereby the hydrogen which, is contained in the closed-cells rapidly diffuses through the cell walls into the atmosphere while some, but much less in volume of the atmospheric gas (because hydrogen is the fastest moving and fastest diffusing of gases) diffuses into the closed-cells. As a result the cells shrink together to be of smaller size and the entire resin article shrinks, resulting in the resin body having a higher specific gravity than original, and the method can be so controlled that the specific gravity of the final product is exactly as desired, and the cells are of a smaller size than original. Nevertheless, and quite surprisingly, the resulting body of relatively high specific gravity is and remains dimensionally stable."

### The Prior Art

Booth discloses a process for producing expanded thermoplastic material by impregnating the material with a gas under pressure while heating the material, cooling and releasing the pressure, and thereafter reheating the material under pressure and then releasing the pressure to allow the material to expand. The gas utilized is "air or any inert gas, such for example as nitrogen or carbon dioxide." The thermoplastic material is polystyrene, polyethylene or the like.

British Expanded Rubber discloses a process for producing expanded thermoplastic material by impregnating the material with a gas under pressure and reducing the pressure to expand the material. The material may be heated during the gas impregnation and cooled during the expansion. The gas utilized is "inert gas such as air, nitrogen or carbon dioxide or a mixture thereof." The thermoplastic material may be polyvinyl chloride, polystyrene, etc.

Miles discloses a process for producing multicellular material by melting a ground polymer under gas pressure and extruding or molding it in the form of a multicellular product. The gas utilized may be "nitrogen, hydrogen, helium, carbon dioxide," etc. The polymer is polyamide, polyethylene, or the like.

In his answer the examiner stated the rejection of all the appealed claims as unpatentable over Booth in view of Miles or British Expanded Rubber in view of Miles. This we interpret as being a rejection for obviousness under 35 U.S.C. § 103. The examiner held that both the primary references essentially disclose the claimed process, with British Expanded Rubber especially teaching the use of a mixture of nitrogen and carbon dioxide and Miles teaching the use of hydrogen, nitrogen, carbon dioxide, etc. Therefore, the examiner held in effect that it would be obvious in view of Miles to substitute hydrogen for the nitrogen or carbon dioxide of the British patent. Since the crust would be a hard impervious material, it was said to be obvious to remove the crust from the surface of the foamed resin as recited in claim 6 because the crust would be objectionable in a soft foamed product. There was said to be nothing patentable in cutting the foamed resin into thin sheets as recited in claim 7 since example 3 of the British patent discloses the making of sheet material. The step of heating the expanded resin to 70–100°C. as recited in claims 8 and 16 was held not to be critical since the step is not recited in all the claims, and obvious because heating would be expected to speed up the desired diffusion of hydrogen.

In its decision affirming the examiner, the board held that the Miles patent clearly shows that both hydrogen and nitrogen have been used in making resin foams, and it does not amount to invention (which we again assume to be a rejection for obviousness under section 103) to use a mixture of nitrogen and hydrogen instead of the mixtures suggested in the Expanded Rubber reference, in view of Miles. The board pointed out that Booth utilizes air, which is a mixture of gases.

It is appellants' position, as stated in their brief:

"The fact is, however, that none of the references, either singly or in combination, teaches the advisability or desirability of using a mixture of 25–90% by volume of hydrogen with the remainder of 75–10% by volume of a heavy, slow diffusing gas such as nitrogen, and neither do any of the references, either singly or in combination teach that by using such particular mixture of hydrogen and nitrogen it is for the first time possible to produce relatively heavy, closed-cell cellular bodies with uniform small cell structure and with dimensional stability. Even if it were possible to combine the references in the manner suggested by the examiner and by the Board of Appeals, the resulting combination would still not be the equivalent of the process of the present invention because it would not show the particular mixture of hydrogen and nitrogen in which the hydrogen must be present in an amount of 25–90% by volume, and the resulting combination would not show the subjecting of the produced closed-cell, cellular body which is lighter than desired to gas exchange with the atmosphere, particularly, as preferred by heating the same to a temperature of 70–100°C., in order to cause shrinking of the cellular body and increase of the specific gravity thereof to the desired specific gravity."

### Obviousness

Appellants' assertion that their claimed subject matter as a whole is unobvious is based essentially on the alleged unobviousness of the result they claim to achieve, i. e., the production of relatively heavy, dimentionally stable, closed-cell cellular bodies.

It is urged by appellants that they are claiming a process for making a closed-cell product, whereas Miles is directed only to making an open-cell product. Appellants state several points as "proof" of this contention. However, each of the stated points is argumentative, and there is no proof of this contention of record. Moreover, the process disclosed by Miles is so similar to the processes disclosed by Booth and the British reference that it appears that any of the

disclosed processes may produce a closed-cell product. There is no dispute but that the processes of the Booth and British references produce closed-cell products.

The production of a closed-cell or open-cell product appears, from the teaching of the art, to depend upon control of the processing conditions. The appealed claims do not recite any specific process steps for producing a closed-cell product. We are thus left with appellants' assertion that the claimed mixture of gases will produce this result.

Since the British patent teaches that the same basic process may be used to produce either open-cell or closed-cell products, it seems clear that the similar basic process of Miles could be used to produce either open-cell or closed-cell products. Therefore, we reject appellants' position that Miles is directed only to open cell products and is inapplicable as a reference.

It is also urged by appellants that the references do not teach diffusion of the hydrogen through the cell walls and consequent gas exchange with the atmosphere. However, it seems obvious from the teachings of the art that a gas such as hydrogen which is lighter than air would escape into the atmosphere if the nature of the thermoplastic resin in expanded form were such as to allow its escape. The references disclose the use of the same plastic resins as those recited in the appealed claims. The references also teach the use of hydrogen and other gases and mixtures thereof. Thus the gas exchange when using hydrogen would seem to be the result expected in the Miles reference.

As we pointed out above, the examiner took the position that the temperature ranges specified in claims 8 and and 16 could not be considered critical, since the heating step is not recited in all the claims. We agree with appellants that, in so holding, the examiner has improperly applied the decision in In re Fear, 136 F.2d 908, 30 CCPA 1197. We recently had occasion to re-examine the rationale of the Fear case in In re Cole, 326 F.2d 769, 51 CCPA ——. In the Cole case we held that the Fear decision lends no support to the position for which the examiner has cited it here.

However, the rejection of claims 8 and 16 was also based on the ground that heating is an obvious way to speed up the rate of hydrogen diffusion. In view of the fact that appellants have not clearly shown that the claimed temperature range *is in fact* "critical," we think this rejection is well taken.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.